UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHYLLIS OLIVER,

    Plaintiff,                                              Civil Action No. 16-CV-12770

vs.                                                           HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS**

This matter is presently before the Court on cross motions for summary judgment [docket entries 13 and 17]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying her applications for Social Security disability insurance and Supplemental Security Income ("SSI") benefits. An Administrative Law Judge ("ALJ") held hearings in October 2014 and February 2015 (Tr. 27-74) and issued a decision denying benefits in April 2015 (Tr. 7-20). This became defendant's final decision in June 2016 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper

> legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); see also *Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of her February 2015 hearing, plaintiff was 45 years old (Tr. 51). She has the equivalent of a high school education and work experience as a deejay, cashier, inspector, packager, and stock/maintenance worker (Tr. 49-52, 307). Plaintiff claims she has been disabled since June 2010 due to sarcoidosis, fibromyalgia, Bell's palsy, asthma, hypertension, anemia, depression, joint pain, depression, and sleep deprivation (Tr. 31, 305-06).

The ALJ found that plaintiff's severe impairments are "degenerative disc disease of the thoracic and lumbar spine; obesity (5'7" and 200 pounds); sarcoidosis; asthma; fibromyalgia; osteoarthritis; depressive disorder; and polysubstance dependence" (Tr. 12) and that her Bell's palsy and hypertension are non-severe impairments (Tr. 12-13). The ALJ found that plaintiff cannot perform her past work (Tr. 18) but that she has the residual functional capacity ("RFC") to perform

a limited range of unskilled, sedentary work.[1] A vocational expert ("VE") testified in response to a hypothetical question that a person of plaintiff's age, education, and work experience, and who has this RFC, could perform certain unskilled, sedentary jobs such as hand packer, bench assembler, and general office clerk (Tr. 72). The ALJ cited this testimony as evidence that work exists in significant numbers that plaintiff could perform and concluded that she is not disabled (Tr. 19-20).

Having reviewed the administrative record and the parties' briefs, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence because his RFC evaluation of plaintiff is flawed. Since the hypothetical question incorporated this flawed RFC evaluation, it failed to describe plaintiff in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs plaintiff is capable of performing.

Plaintiff's RFC evaluation is flawed for the following reasons. First, the ALJ failed

---

[1] Specifically, the ALJ found that plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she requires a sit/stand option every 15 minutes; she can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; she cannot use ladders; she must avoid all unprotected heights and moving machinery; she must avoid even moderate exposure to dust, fumes, and gases; she must avoid concentrated exposure to extreme heat and cold; she requires a cane to walk more than five or so feet; she is limited to simple, routine, repetitive tasks which require little judgment and can be learned in a short period of time; she cannot have interaction with the general public; and she can have occasional interaction with coworkers, meaning that she can be in proximity to them, but she function [sic] as a member of a team.

(Tr. 14.) Sections 404.1567(a) and 416.967(a) define sedentary work as "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" and "a certain amount of walking and standing."

3

to consider the side effects of plaintiff's medications. The record indicates that plaintiff takes, or at various times has taken, an astonishing number of medications, including Flovent, Methotrexate, Prednisone, Zoloft, Albuterol, Vicodin, Cyclobenzaprine, Gabapentin, Hydrocodone, Zantac, Hydrochlorothiazide, Ultram, Advair, Naprosyn, Lorazepam, Mobic, Promethazine Hydrochloride, Ativan, Ranitidine, Phenergan, Cymbalta, Dulera, Flexeril, Neurontin, Norco, Fexmid, Lortab, Vistaril, Sertraline, Tramadol, Qvar, Meloxicam, and Benadryl (Tr. 308, 322, 338, 400, 415, 417, 430, 435-36, 438, 454-56, 469, 538, 551, 583, 585, 616, 620, 732, 897, 1037, 1043-45, 1048, 1063-65, 1310-12, 1385), many of which have known side effects. Plaintiff testified that one reason she believes she cannot work is that "all the drugs that I take, a lot of time I'm not functionable [sic]" (Tr. 59) and that her medications make her feel "jittery and shaky," drowsy, dizzy, and "off balance" (Tr. 61). On her function report plaintiff reported side effects of tiredness, fatigue, dizziness, shakiness, nervousness, difficulty sleeping, and nausea (Tr. 315, 322). The medical records contains several entries indicating plaintiff experiences fatigue, steroid side effects, nausea, dizziness, and insomnia (e.g., Tr. 416-17, 429, 435, 437-39, 485, 517, 615, 819, 943, 960, 1114, 1383).

At the hearing, plaintiff was asked if she experiences medication side effects, but the ALJ did not inquire further when she answered affirmatively. Nor did he make any findings on this issue,[2] although he acknowledged plaintiff's testimony that "[h]er inhaler causes her to be jittery and shaky" and that "[h]er prescription medication[s] cause drowsiness and dizziness" (Tr. 15). This lack of findings is an error requiring remand, as the Sixth Circuit has held that the ALJ must evaluate

---

[2] Citing records from plaintiff's psychiatrist, the ALJ stated that "there is indication that her medication is helpful, and no side effects are noted" (Tr. 16, citing Ex. 23F). However, the medications at issue in that report are Cymbalta and Zoloft only (Tr. 1402), not the 31 other medications plaintiff has been prescribed.

"[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must determine which medications plaintiff was taking during the relevant time period; make findings as to the nature and severity of these medications' side effects, if any; adjust his findings as appropriate regarding plaintiff's RFC; and incorporate these findings in proper hypothetical questions to the VE.

Second, the RFC evaluation is flawed because the ALJ neglected to make required findings concerning the effect, if any, of plaintiff's obesity on her other impairments. The ALJ found that obesity is one of plaintiff's severe impairments, as the record shows she is 5'-7" tall and weighs 200 pounds (Tr. 12).³ Under SSR 02-1p, the ALJ must consider a disability claimant's obesity at all steps of the sequential process. *See id.,* Policy Interpretation ¶ 3. Further,

> [o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators *must consider* any additional and cumulative effects of

---

³ This yields a body mass index ("BMI") of 31.3. *See* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm. Under defendant's regulations, an adult with a BMI of 30 or above is deemed to be obese. *See* SSR 02-1p.

>
> obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q (emphasis added).

In the present case, there is no indication that the ALJ gave proper consideration to plaintiff's obesity. At the hearing, the ALJ did not ask plaintiff if or how her weight affects her other symptoms or her ability to work, and in his written decision the ALJ did not mention plaintiff's obesity except to say: "In terms of the claimant's obesity, there is no elaboration in the treatment records as to symptoms or limitations stemming from this impairment. The claimant has been advised by her treater [sic] that she should engage in low impact aerobic exercise (Exhibit 25F, p 2)" (Tr. 16). On remand, the ALJ must make specific findings as to the effect, if any, of plaintiff's obesity on her other impairments, including the degenerative disc disease in her thoracic and lumbar spine, and her sarcoidosis, asthma, fibromyalgia, and osteoarthritis. As the regulations state, above normal body weight can negatively affect other impairments. In particular, the ALJ must determine whether and to what extent plaintiff's obesity exacerbates the pain in her neck, shoulders, and back, and/or diminishes her ability to sit, stand, walk, or concentrate. The ALJ must include any such findings in reevaluating plaintiff's RFC and, as appropriate, in framing revised hypothetical question(s) to the VE.

Third, the RFC evaluation in this matter is flawed because the ALJ neglected to make any findings as to whether plaintiff's frequent medical appointments prevent her from working on a full-time basis. At the hearing, plaintiff testified that she sometimes misses appointments with her psychotherapist because "I have so many other doctors' appointments, you know, so sometimes I can't make all of them" (Tr. 36-37). The VE testified that it "would be work preclusive" if, as plaintiff's attorney phrased the question, plaintiff "[w]ould . . . need to be off task to attend medical

appointments on a biweekly basis" (Tr. 72). In fact, the VE indicated that employers tolerate no more than "one absence per month on average" (Tr. 72). The Court has not attempted to count all of plaintiff's many medical appointments, but it appears she has attended such appointments more frequently than once per month or once every two weeks.[4] On remand, the ALJ must make a finding as to the frequency of plaintiff's various medical appointments and incorporate this finding in revised hypothetical questions to the VE to determine whether a person who is absent from work with such frequency is employable.

Fourth, the RFC evaluation is flawed because the ALJ did not adequately explain his finding that plaintiff can perform sedentary work with "a sit/stand option every 15 minutes" (Tr. 14). From this finding, it is apparent that the ALJ accepted plaintiff's testimony that she cannot sit for "very long" before needing to change position to alleviate her back pain (Tr. 61-62). In fact, the ALJ found that plaintiff "has credibly reported" that her breathing problems and joint pain preclude "extended sitting, standing, or walking" (Tr. 17). The ALJ believes "that a restriction to sedentary exertion that permits a sit/stand option every 15 minutes" would accommodate plaintiff's need to change position, but he neglected to make a finding as to how long, if at all, plaintiff can stand unassisted. The ALJ noted plaintiff's testimony, without accepting or rejecting it, that she uses a cane (Tr. 15), and the record contains several entries indicating that she does so (e.g., Tr. 429 (prescription for cane), 493, 551 ("[s]he uses a cane for balance and support"), 589, 1390, 1402).

---

[4] For example, the Court notes that plaintiff had at least 25 appointments at Michigan Spine & Pain over a 45-week period from October 28, 2013, to September 8, 2014 (Tr. 581-632, 813-87). Plaintiff had at least 13 appointments at that clinic over an 18-week period from May to September 2014 (Tr. 813-87). Plaintiff sees one of her treating physicians, Dr. Huda, every three months (Tr. 564), her psychotherapist and psychiatrist approximately monthly (Tr. 486-87, 573), and a rheumatologist and ophthalmologist of unknown frequency (Tr. 39, 56), among others.

Dr. Huda stated that plaintiff can stand for one to two hours during a six- to eight-hour period "[with] something to lean on" (Tr. 565). On remand, the ALJ must determine how long plaintiff can stand (both unassisted as well as with a cane or something else to lean on), and, as appropriate, revise his RFC evaluation and hypothetical questions to the VE. If the ALJ finds that while standing plaintiff must use a cane or anything else for balance and/or support, he must ask the VE whether this need can be accommodated in the workplace.

Fifth, the RFC evaluation is flawed because the ALJ did not adequately explain his finding that plaintiff can meet the ten-pound lifting requirements of sedentary work. Plaintiff testified that she could not lift a gallon of milk (eight pounds) without her wrists hurting and that she "can't even hold the skillet without holding it with both hands and it still hurts" (Tr. 64). In her function report, plaintiff indicated she "cannot lift less than 5 lbs occasionally" (Tr. 320). Dr. Huda opined that plaintiff can lift or carry less than five pounds (Tr. 566). The only evidence that plaintiff can lift greater weight is the opinion of the consulting physician, Dr. Karo, who examined plaintiff once in January 2011 at the request of the disability determination service. Dr. Karo, without explanation, opined that plaintiff can lift up to 100 pounds occasionally and up to 50 pounds frequently (Tr. 403).[5] The ALJ gave Dr. Karo's opinions "some weight," but he did not indicate how much weight, if any, he gave to Dr. Karo's opinion concerning plaintiff's lifting ability. In the same paragraph, the ALJ reiterated that he found plaintiff "generally credible" (Tr. 17). On remand, the ALJ must make a specific finding as to plaintiff's lifting ability with due regard to the deference

---

[5] It is not apparent from her report whether Dr. Karo was aware of any of plaintiff's impairments, as she noted only "a possible diagnosis of sarcoidosis" (Tr. 400) and did not mention plaintiff's documented diagnoses of bulging discs in her thoracic spine, asthma, fibromyalgia, osteoarthrisis, or depression. Under these circumstances, it is doubtful whether Dr. Karo's opinion deserves any weight at all, but this is for the ALJ to reevaluate on remand.

owed to the opinions of treating physicians and due regard to the fact that plaintiff's lifting capacity may be diminished by joint pain caused by her sarcoidosis and fibromyalgia.

Fifth, the RFC evaluation is flawed because the ALJ failed to explain adequately why he gave only "some weight" (Tr. 17) to Dr. Huda's opinion. Dr. Huda opined in October 2012 that, in addition to her five-pound lifting restriction, plaintiff cannot sit upright for six hours in an eight-hour day because she must lie down due to shortness of breath; that she can rarely reach above her shoulders or down to the floor; that she can rarely "carefully handle objects" or "handle with fingers"; that she has "generalized body aches/pain"; that plaintiff's complaints of pain are "credible"; and that plaintiff's sarcoidosis "affects mainly lungs but can cause muscular pain & weakness" (Tr. 565-68). The ALJ gave these opinions "some weight" for the following reasons:

> [a]lthough the general categories of restrictions are warranted here, the degree of limitation posited by Dr. Huda is not substantiated by the treatment records. The claimant's pulmonary function tests have shown only mild to moderate impairment, and the diagnostic imaging of the claimant's spine has similarly not revealed significant abnormalities. Also, the claimant's physical examinations have been largely normal apart from the presence of trigger points. The claimant has treated conservatively for her physical impairments, and treatment has been noted to provide some, although not total, relief.

(Tr. 17.)

This statement of reasons does not comport with the treating physician rule, which requires the ALJ to

> give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012). The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and

9

> impairments and this perspective "cannot be obtained from objective medical findings alone." 20 C.F.R. § 416.927(d)(2) (language moved to 20 C.F.R. § 416.927(c)(2) on March 26, 2012). Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Rogers*, 486 F.3d at 242. In all cases, the treating physician's opinion is entitled to great deference even if not controlling. *Id.* The failure to comply with the agency's rules warrants a remand unless it is harmless error. *See Wilson*, 378 F.3d at 545–46.

*Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). Even assuming that Dr. Huda's opinion regarding plaintiff's limited ability to lift weight is not supported by plaintiff's pulmonary impairment or by the lack of significant abnormalities in her spine,[6] Dr. Huda stated that plaintiff's sarcoidosis "can cause *muscular pain & weakness*" and that she found plaintiff's complaints of pain to be "credible" (Tr. 568) (emphasis added). Plaintiff also has fibromyalgia which, as the Sixth Circuit has noted, "can be a severe and disabling impairment" that "'unlike medical conditions that can be confirmed by objective testing, . . . present[s] no objectively alarming signs.'" *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 434 (6th Cir. 2013) (quoting *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)). The ALJ's finding regarding plaintiff's lifting ability is particularly puzzling given that the ALJ found "generally credible the claimant's reports that she is significantly limited with regard to exertional abilities" (Tr. 17).

---

[6] In fact, however, the medical evidence does show significant abnormalities in plaintiff's spine. An MRI of plaintiff's thoracic spine in July 2014 showed "small disc bulges" at two levels (Tr. 685). MRIs of plaintiff's lumbar spine in December 2013 and July 2014 showed "[m]ild bilateral neural foraminal narrowing at L5-S1" (Tr. 693, 700). Radiographs of plaintiff's lumbar spine in April 2014 showed "ligamentous instability or sub failure" at four levels and "clinically significant ligament injury" at L2 (Tr. 687). An MRI of plaintiff's cervical spine in October 2013 showed degenerative disc disease (Tr. 701), and radiographs of plaintiff's cervical spine in April 2014 showed "clinically significant ligament injury" at C2 to C6 (Tr. 693).

10

Nor does the above-quoted statement adequately explain why the ALJ rejected Dr. Huda's opinion that plaintiff cannot sit for six out of eight hours and that she must lie down periodically due to shortness of breath. The ALJ's finding that plaintiff's breathing difficulties are "mild to moderate" depends in part on the ALJ's own interpretation of raw medical data (spirometry test results and FEV1 values) (*see* Tr. 16, first full para. & Tr. 16 n.1), a role the ALJ is not qualified to perform. Dr. Huda, by contrast, is a pulmonary specialist and treating physician. Even if plaintiff's pulmonary condition may be characterized as "mild" or "moderate," those adjectives alone do not necessarily show that plaintiff does not suffer from shortness of breath[7] or that she does not need to lie down frequently.

Nor did the ALJ accept or reject Dr. Huda's opinion that plaintiff cannot reach overhead or to the floor or that she can only rarely use her hands or fingers. If these limitations are accepted, it seems unlikely that plaintiff could do the "hand packer," "bench assembly," or "office clerk" jobs identified by the VE, but this will be for the ALJ to determine. On remand, the ALJ must reassess Dr. Huda's opinions in compliance with the treating physician rule and, as necessary, revise plaintiff's RFC evaluation and the hypothetical question(s) to the VE.

Sixth, the RFC evaluation in this matter is flawed because the ALJ neglected to make a finding regarding plaintiff's claimed need to lie down frequently to alleviate her back pain (Tr. 62). Plaintiff stated she spends most of a normal day in bed due to pain (Tr. 68). The ALJ neither accepted nor rejected this testimony (indeed, he did not even acknowledge it in his written decision),

---

[7] The Court notes that another pulmonary specialist, Dr. Ferguson, found in February 2011 that "[p]ulmonary function test results reveal moderate restriction, mild airflow obstruction, and mild improvement after bronchodilators consistent with pulmonary parenchymal disease and sarcoidosis" (Tr. 416). He noted that plaintiff "still has significant fatigue, arthralgias, shortness of breath, and cough." *Id.*

although he did find that plaintiff was "generally credible" and that "[t]he treatment records reflect widespread joint pain related to fibromyalgia, osteoarthritis, and sarcoidosis" (Tr. 17). The VE testified that only "two 15 minute breaks, and a half hour lunch in an eight hour workday" are permitted, and that a worker's need to lie down or recline for two hours during the workday "would eliminate all work" (Tr. 72). If would appear that if plaintiff's testimony is accepted, she would not be able to perform any of the jobs identified by the VE. On remand, the ALJ must determine how frequently and for how long, if at all, plaintiff must lie down during the day, and, as appropriate, revise his RFC evaluation of plaintiff and his hypothetical question(s) to the VE.

Finally, on remand the ALJ must reconsider his finding that plaintiff "experienced an exacerbation of pain symptoms in October 2013, owing to a motor vehicle accident; however, it appears that *the accident was relatively minor and no significant increase in symptoms is documented* (Exhibit 14F)" (Tr. 15) (emphasis added). Exhibit 14F contains the records from Michigan Spine & Pain, where plaintiff received treatment for seven months beginning in October 2013 after she was involved in a car accident (Tr. 581-633). Exhibit 16F contains ten more months of records from that pain clinic where plaintiff received treatment from October 2013 to September 2014 (Tr. 644-887). The severity of the accident is not revealed in these records, only that plaintiff was a seat-belted front seat passenger in a car that was rear-ended while stopped at a traffic light and that plaintiff was transported to a hospital by ambulance (Tr. 628). How the ALJ concluded that "no significant increase in symptoms is documented" is unclear. The records the ALJ cited (Ex. 14F, Tr. 580-633)), as well as those from the same pain clinic he did not cite (Ex. 16F, Tr. 644-887), document significant symptoms indeed, many of which the care providers attributed to the car accident. *See, e.g.,* Tr. 628 (noting, at her first visit to this pain clinic following the accident, that

12

plaintiff complained of pain in her head, neck, shoulders, and upper back, all of which was "MVA Related"; and in her mid and lower back, knees, feet, hands, chest, and elbow; plaintiff rated her pain at 8/10); Tr. 621-22 (noting, in the month following the car accident, "acute pain due to trauma"; plaintiff rated her pain at 7-8/10; plaintiff complained of pain in her neck, shoulder, and mid-back); Tr. 614-16 and 610-12 and 606-08 (noting, two and three and four months following the car accident, "acute pain due to trauma"; plaintiff rated her pain at 7/10; plaintiff continued to complain of pain in the same areas). If on remand the ALJ stands by his italicized statement, he must explain how he arrived at this conclusion and cite specifically to supporting medical records.

For these reasons, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded for further proceedings as specified above. This is a sentence four remand under § 405(g).

Dated: March 24, 2017
      Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF system to their respective email or First Class U. S. Mail addresses disclosed on the Notice of Electronic Filing on March 24, 2017.

s/Teresa McGovern
Case Manager Generalist